JOHN G. ROOT, APPELLANT, V. GERHARDT FAST ET AL., APPELLEES.

FILED APRIL 19, 1899.    No. 8860.

1. **Negotiable Note**: PAYMENT: SUBSEQUENT TRANSFER.  When the owner and holder of a past due negotiable note receives payment thereof from the maker or other person liable thereon, the obligation is extinguished, and if it be afterwards transferred to another, the transferee will acquire no better title or greater right than the transferrer possessed.

2. ———: ———: ———: EVIDENCE.  The evidence examined, and *held* sufficient to sustain the finding of the trial court.

APPEAL from the district court of York county.  Heard below before BATES, J.  *Affirmed.*

*C. C. Flansburg*, for appellant:

A surrender of notes held as collateral, in exchange for other securities, makes the holder of such new security a holder for value. (*Clark v. Iselin*, 21 Wall. [U. S.] 360; *Sawyer v. Turpin*, 91 U. S. 114; *Greenwell v. Hayden*, 78 Ky. 332; *Cherry v. Frost*, 7 Lea [Tenn.] 1.)

A transfer of collateral security may be made to a third party as trustee by agreement. (*City Bank of New Haven v. Perkins*, 29 N. Y. 554.)

A note does not cease to be negotiable because it is overdue, and may, notwithstanding its dishonor, be transferred for value, to a third party, who takes it subject only to existing defenses. (*Baxter v. Little*, 6 Met. [Mass.] 7; *Kniselcy v. Evans*, 34 O. St. 158; *Davis v. Miller*, 14 Gratt. [Va.] 1; *Davis v. Noll*, 17 S. E. Rep. [W. Va.] 791; *Fitch v. Gates*, 39 Conn. 373; *Phillips v. Runnells*, Morris [Ia.] *391; *Annan v. Houck*, 4 Gill [Md.] 325;

*Leavitt v. Putnam*, 3 N. Y. 494; *Scott v. First Nat. Bank of Kokomo*, 71 Ind. 448.)

Every person dealing with a corporation is bound to take notice of the provisions of its charter, constitution, and by-laws, and its way of doing business. (*Relfe v. Rundle*, 103 U. S. 222; *Credit Co. v. Howe Machine Co.*, 54 Conn. 357; *Bocock v. Alleghany Coal & Iron Co.*, 82 Va. 913.)

A writing signed by one, an officer of a corporation, in his individual name, does not make it the signature of the corporation by adding thereto the title of his office. (*Sumner v. Williams*, 8 Mass. 162; *Hately v. Pike*, 44 N. E. Rep. [Ill.] 441; *Klopp v. Moore*, 6 Kan. 27; *Alexander v. Cauldwell*, 83 N. Y. 480.)

*Gilbert Bros.*, contra:

Foss had authority to accept payment from Goosen for the Loan and Guarantee Company, and payment to the agent was sufficient. (*Preston Nat. Bank v. Smith*, 47 N. W. Rep. [Mich.] 502; *Oakes v. Cattaraugus Water Co.*, 38 N. E. Rep. [N. Y.] 461; *Eureka Iron Works v. Bresnahan*, 27 N. W. Rep. [Mich.] 524; *Hastings v. Brooklyn Life Ins. Co.*, 34 N. E. Rep. [N. Y.] 289; *Steinkraus v. Korth*, 44 Neb. 777; *Heaton v. Thayer*, 42 Neb. 47.)

Ratification is equivalent to original authority to act, and corporations are bound in the same manner as natural persons. (*Rich v. State Nat. Bank*, 7 Neb. 201.)

SULLIVAN, J.

From the bill of exceptions it appears that on February 5, 1896, the Loan & Guarantee Company of Hartford, Connecticut, made to Gerhardt Fast a loan of $1,200, secured by a mortgage upon the borrower's farm in York county; that in the following August Johann Goosen bought the land and in the deed of conveyance assumed the payment of the mortgage indebtedness. The loan company was incorporated in 1884, and from that time until January, 1895, F. I. Foss, of Crete, in this state, was a stockholder, a director, and its vice-president. The

company was loaning money in Nebraska and its business here was conducted, prior to May, 1890, by the firm of Dawes & Foss, and after that time by Mr. Foss until 1895, when his official relations with the company ceased. The Fast loan matured February 1, 1891. By the terms of the bond and mortgage the interest was payable semi-annually, and it was generally paid by Mr. Goosen about the time it became due. Each payment was made to the company's representative at Crete, who would afterwards mail the interest coupon to the defendant. On May 29, 1891, Goosen sent a draft to Foss for $1,283.40, that being the balance then remaining due upon the loan. The draft was received by Mr. Foss and paid in due course. What became of the money does not appear. From March 1, 1886, to March 19, 1891, the bond and mortgage given by Fast to the Loan & Guarantee Company were deposited with, and held by the Trust & Safe Deposit Company of Hartford as collateral security. On the last named date these securities were released and returned to the Loan & Guarantee Company. The plaintiff claims that they were then deposited with him as collateral security for a loan of $5,000 previously made by the Farmers & Merchants National Bank of Hartford to the Loan & Guarantee Company. It appears that the $5,000 loan was made on the note of the Loan & Guarantee Company indorsed by its president, W. L. Matson, and that as collateral security there was deposited with the plaintiff, as trustee, a number of western farm mortgages owned by the borrower. These collaterals were to be held primarily for the benefit of the loaning bank, of which Mr. Root was president, and secondarily for Matson and the loan company. Eventually, then, the loan company would receive the fruits of this litigation, if any there should be. This fact has, of course, no bearing upon the substantive rights of the plaintiff, and is only mentioned in this connection as a circumstance affecting the credibility of his principal witness, whose testimony we will hereafter have occasion to consider.

It is contended by counsel for appellant that Foss was not authorized to collect money for the Loan & Guarantee Company. This contention rests upon the testimony of Frank E. Johnson, who was secretary of the loan company prior to January 15, 1895, and is now its president. He says the company never gave any one authority to represent it in the collection of notes, except in cases where the notes were sent out to some one with express direction to collect them. This sweeping statement is not conclusive. It does not carry conviction. It is remarkable only for the boldness and abandon with which the witness testified to a fact of which he was necessarily ignorant. He was not the business manager of the company and in the very nature of things could not know what authority that officer had conferred upon Mr. Foss or others. It is established beyond dispute that the following letter was sent to Mr. Foss soon after the dissolution of the firm of Dawes & Foss:

"THE LOAN & GUARANTEE COMPANY OF CONNECTICUT.
"Wm. L. Matson, Pres.        Frank E. Johnson, Sec'y.
        "HARTFORD, CONN., September 14, 1890.

"*F. I. Foss, Crete, Neb.:* You are hereby authorized in behalf of this company to collect any or all moneys due or to become due on account of interest or principal on all mortgages negotiated for and sold to us by either yourself or Dawes & Foss.

        "Yours truly,        W. L. MATSON, *President.*"

To avoid the evidential effect of this letter an attempt was made to repudiate Mr. Matson's authority to write it. This effort was unsuccessful. From the testimony of Mr. Foss, which is practically undisputed, it appears that Matson was the general financial manager of the company from the time of its organization until January, 1895; that all the business of the corporation was under his immediate control and direction, and that all the Nebraska business was done through him. Foss further testified that, under contract with the company, either

the witness, or the firm of Dawes & Foss, had made all
the company's Nebraska loans and had collected all the
money which became due on such loans prior to 1895.
There is abundant proof—in fact it is almost conclusive
—that a payment to Foss was a payment to the Loan &
Guarantee Company.

But it is insisted that on May 29, 1891, when the pay-
ment was made, the Fast bond and mortgage were held
by the plaintiff as collateral for the Farmers & Merchants
National Bank.  The testimony upon this point is rather
unsatisfactory.  Evidently an intimate business rela-
tionship exists between the bank and the loan company.
Mr. Root is president of one corporation and a stock-
holder and director of the other.  From time to time col-
laterals held as security for the $5,000 loan were sur-
rendered by the plaintiff, who accepted other securities
in their place.  He testified on the trial that he could not
tell the exact date when he, as trustee, received the Fast
papers, but that, according to his best recollection, they
were substituted some time in the year 1891 for other like
securities which he permitted the loan company to with-
draw from his custody.  Frank E. Johnson, after testify-
ing that he was secretary for the loan company prior to
1895, said in part: "It is impossible to tell the exact date
when this loan was substituted.  No date was ever put
down when a loan was either substituted or withdrawn.
The Fast loan was undoubtedly substituted on or about
March 19, 1891."  The witness then refers to the fact that
the Trust & Safe Deposit Company had the papers from
March 1, 1886 to March 19, 1891, and adds:  "To the best
of my knowledge and belief the Fast mortgage loan was
transferred to Mr. John G. Root, as trustee, on March 19,
1891, or within a few days thereafter.  I am convinced of
this from the fact that I find evidence of the withdrawal
about that time of certain loans which were in the hands
of Mr. Root, as trustee, and for which in part the Fast
loan was undoubtedly substituted."  It will be noticed
in reading the evidence quoted that the witness does not

testify to any specific fact within his personal knowledge, but only to his belief, and to his faith in the correctness of a deduction. He says he found what he chooses to call evidence, not of the transfer to Root of the Fast papers, but of another fact from which he makes an inference in regard to the date of the transfer. Whether the evidence he found possessed probative force we do not know; and whether the fact which he thinks it establishes warrants the conclusion deduced therefrom, we cannot even conjecture. It is quite possible that in the exuberance of his zeal for the success of the trustee Mr. Johnson may have drawn his conclusions from false or inadequate premises. His evidence is discredited by other circumstances. On January 11, 1895, he wrote Goosen that the Loan & Guarantee Company then held the note and mortgage made to it by Fast and, in effect, demanded payment. About a month later he again wrote saying that he had applied to Foss for an explanation of the matter and that Foss had promised to send the statement at once. April 8, 1895, Johnson wrote another letter in which he said the loan company had put the matter of the alleged payment of the Fast loan in the hands of William Stull, of Lincoln, for adjustment. The papers were afterwards sent to Stull. The mortgage was assigned to the plaintiff, but the assignment, either through design or accident, was not dated. The acknowledgment of the assignment, however, shows that it was taken long after Goosen had paid the loan. Why the assignment was not acknowledged at the time plaintiff claims it was made has not been explained. Neither has there been any attempt on the part of Johnson to explain why his company claimed to hold, and why it asserted the right to receive payment of, the loan on January 11, 1895, if it had in fact been previously transferred to Root. Everything considered we think the trial court was right in finding the issues in favor of the defendant. The plaintiff, being a stockholder and director of the Loan & Guarantee Company, has evidently, at its instance and for its benefit, put

on the guise of a good-faith purchaser, hoping thus to succeed in this action. The judgment is

AFFIRMED.