THOMAS DRAPER, ADMINISTRATOR OF THE ESTATE OF HARRY
DRAPER, DECEASED, V. CHARLES A. TUCKER ET AL.,
ADMINISTRATORS OF THE ESTATE OF GEORGE P. TUCKER,
DECEASED.

FILED JUNE 18, 1903. No. 12,852.

1. **Trial:** ERROR. A judgment will not be reversed on account of a technical error in the admission of evidence, when the party complaining is not prejudiced thereby.

2. ——: ——. Where an objection to a question is overruled—the answer not being given—and the question is afterwards put in another form and is answered without objection, error cannot be predicated thereon.

3. **Parent May Recover for Loss of Services of a Child.** A parent may recover for the loss of expected services of children, not only during minority but afterwards, on evidence justifying a reasonable expectation of pecuniary benefit therefrom.

4. **Damages:** AMOUNT. *Held*, That a verdict for only $10, for the pecuniary loss sustained by reason of the death of a minor child three years and four months old, is inadequate in amount.

ERROR to the district court for Lancaster county: ED-
WARD P. HOLMES, DISTRICT JUDGE. *Reversed.*

*George A. Adams* and *Jesse B. Strode,* for plaintiff in
error.

*Allen W. Field* and *Guy A. Andrews, contra.*

BARNES, C.

The plaintiff, as administrator, commenced this action
in the district court for Lancaster county to recover damages alleged to have been sustained by the next of kin of
the intestate, Harry Draper, a minor, whose death was
alleged to have been caused by the negligence of the defendants. The case is now before us for the second time.
On the first trial the jury returned a verdict for the plaintiff for $1,000, and he had judgment. The defendants
prosecuted error, and the trial in this court resulted in a
reversal of that judgment. *Tucker v. Draper,* 62 Neb. 66.

The particular ground for reversal was the failure of the trial court to submit the question of contributory negligence to the jury. On the second trial the plaintiff had a verdict for $10. His motion for a new trial was overruled; judgment was rendered in his favor, and he now brings the case here by petition in error. The facts disclosed by the record, briefly stated, are as follows:

The plaintiff's son, a child three years and four months old, on the 2d day of April, 1895, in company with his brother, a year or two older, went onto some lots situated in the city of Lincoln owned by the estate, of which one of the defendants was the administratrix and in which both of them had an interest, fell into a well situated thereon and was drowned. It appears that sometime before the accident occured one Meyer had been renting a building situated on the southwest corner of the lots, in which he conducted a saloon; that while engaged in that business he had invited and allowed persons to hitch and feed their teams on the vacant part of the premises; that the building had formerly stood on another part of the lots, and had been supplied with water from the well in question; that shortly after the building was moved, the pump was taken out of the well and a curb was built around it from ten to fifteen inches in height, which was covered with two-inch planks, so that the premises, including the well, at that time, were placed in a safe condition; that shortly before the accident some boys were seen attempting to remove the covering of the well, and were driven away by one not the owner of the premises; but in some way one of the planks used as a covering was taken off; the well was then left open and that was the condition which existed at the time of the accident. On that day several persons saw the children on the street and on some lots adjoining the premises, where a ball game was in progress; they also visited a livery stable in that vicinity where their father's horse was kept; and finally, unattended by any one, wandered onto the premises in question. One of the witnesses testified that about 5 o'clock in the afternoon she saw the two

children, still unattended, at the well; that the deceased appeared to reach over inside the curb for something, lost his balance and fell in. She immediately gave the alarm, and as soon as possible the body of the child was recovered, but when taken out of the well he was dead. The plaintiff was appointed administrator of the estate of the deceased, and brought this suit, in his representative capacity, to recover the pecuniary loss alleged to have been sustained by himself and others, as next of kin of the deceased, and the trials resulted as above stated.

1. Plaintiff contends that the court erred in overruling his objections to the cross-examination of witness, Charles Meyer, Jr. It appears that on such examination of this witness he was asked by counsel for the defendants the following question: "Do you know where the well was?" This was objected to as not proper cross-examination. The objection was overruled, and the witness testified as to the location of the well. It is true that, strictly speaking, the question asked and answered was not proper cross examination. Yet it is apparent from the record that the plaintiff was in no manner prejudiced by the testimony. Meyer's evidence did not in any manner differ from the evidence produced by the plaintiff himself at to the location and condition of the well. The judgment of the trial court will not be reversed for error without prejudice, or on account of harmless error. *St. Paul Fire & Marine Ins. Co. v. Gotthelf,* 35 Neb. 351; *Forbes v. Thomas,* 22 Neb. 541; *Dillon .v. Russell & Holmes,* 5 Neb. 484; *Tracey v. State,* 46 Neb. 361; *Stratton v. Dole,* 45 Neb. 472; *Vernon v. Union Life Ins. Co.,* 58 Neb. 498; *Andrews v. Kerr,* 54 Neb. 618.

2. It is alleged that the court erred in overruling the plaintiff's objections to certain interrogatories put to the witness, Nelson Westover, on his direct examination. The record in relation to that matter is as follows:

Westover testified that his residence was in the city of Lincoln; that he had lived there about thirty-one years; that he had brought up a family consisting of nine chil-

dren, five boys and four girls; the oldest boy being almost twenty-three, and the youngest about nine years of age. He was then asked the following question:

Q. State to the jury what, in your opinion, would be the value of the services of a boy, to rear him in this community and properly clothe, educate with the ordinary advantages of school, over and above his expenses, from the time of his birth to the time of his majority.

Objected to as incompetent, immaterial and not proper under the issues in this case. Overruled. Exception.

A. Well, that depends on how a fellow would use his children.

Q. Well, properly working them when they should be worked, evenings and Saturdays, and going to school all the year, what would you say would be their money value to you over and above their expenses?

Objected to as incompetent, immaterial, irrelevant and not tending to prove any of the issues in this case. Overruled. Exception. No answer.

Q. You may state what would be the value of the services of a child, treated as your own was treated, from the time of his birth to his majority.

Objected to as incompetent, immaterial, irrelevant and not proper under the issues in this case. Overruled. Exception.

A. Well, my children have run behind, so far.

Plaintiff moves to strike out the answer as not responsive.

By the Court: Sustained.

Q. Just answer the question.

A. Well, I thought I had answered the question.

Q. Just give your opinion—what would be the value of the services of the boy over and above the cost of keeping him?

A. My experience is, that I do not think a boy twenty-one years old is even with his expense.

Q. You think the parent would be behind?

A. Yes, sir.

It will be observed that the question was finally asked and answered without objection. It further appears that the plaintiff moved to strike out the testimony of the witness on the question of value. The motion was overruled, and thereupon the plaintiff cross-examined the witness at length on the value of the services of an infant from the age of the deceased to majority, and brought out the following:

Q. Mr. Westover, do you know what business Mr. Draper was engaged in?

A. Yes, sir.

Q. Do you think a boy twelve or thirteen years old until he was twenty-one could be of any service to him?

A. Yes, sir; if he put him in the business his services would be of value to him.

Q. How much value, say from twelve years to twenty-one years, in his business, would a boy of that age be?

A. A boy of that age would be as valuable as any young man he would hire.

Q. Wouldn't he earn more than it cost to keep him?

A. Yes, sir.

The same objection is made to the testimony of A. D. Burr, whose experience and qualifications were the same as Westover's. He has brought up a family of boys in the city of Lincoln from their birth until after they reached their majority. His testimony was, practically, the same as Westover's, and the main question was answered by him without objection or exception. Therefore the record is not in a condition to render the contention of the plaintiff available. It further appears that Gran Ensign testified to about the same state of facts, having had the same experience as the witnesses Burr and Westover, without any objection on the part of plaintiff whatever.

The authorities on the question of the proper way to prove the value of the services of a minor are very meager. None are cited by counsel for either party, and after a careful research we have been unable to find any authority bearing directly on this point. The plaintiff himself pro-

duced and relied on the same class of testimony in order to establish his measure of damages.    It is probable that the jury were not influenced by this testimony.    They were as competent as the witnesses, to judge of the value of the services, and whether or not they would be equal to or greater than the cost of rearing and educating the child until he arrived at majority.    In the case of *Chicago & A. R. Co. v. Shannon*, 43 Ill. 338, the court said:

"The question of how damages are to be measured must be largely left (within the limits of the statute) to the discretion of the jury, to whom the law commits the question, and who can give such damages as shall be a fair and just compensation.    What the life of a person is worth in a pecuniary sense to another, is a question which does not lie within the limits of exact proof, and hence the subject has been confided to the jury, the court to see that their finding be not the result of passion or prejudice."

We therefore hold that the failure of the court to exclude the evidence complained of was not reversible error.

3. Plaintiff contends that the court erred in giving paragraph 15 of his own instructions to the jury, because by that instruction the recovery was limited to the loss of the value of the services of the deceased during his minority.

In the case of *Missouri P. R. Co. v. Baier,* 37 Neb. 235, this court said:

"A parent may recover for loss of expected services of children, not only during minority, but afterwards on evidence justifying a reasonable expectation of pecuniary benefit therefrom."

In the case of *Johnson v. Missouri P. R. Co.,* 18 Neb. 690, we find the following statement:

"If it should appear upon the trial that the father suffered no damage in the death of the son, it is probable there could be a recovery only for nominal damages.    But, it is said the word 'pecuniary' as used in our statute is not construed in the strict sense.    The damages are largely prospective, and their determination committed to the dis-

cretion of juries upon very meager and uncertain data. A parent may recover for the loss of expected services of children not only during minority, but afterwards, on evidence justifying a reasonable expectation of pecuniary benefit therefrom."

The same rule was announced in *Ewen v. Chicago & N. W. R. Co.*, 38 Wis. 613, and in *Post v. Olmsted*, 47 Neb. 893.

It appears from the evidence that the plaintiff at the time of the accident was forty years of age; that he was engaged in the restaurant business in the city of Lincoln; that his expectancy of life extended many years beyond the minority of the deceased. We therefore hold that the giving of the instruction complained of, which limits the recovery to the pecuniary loss of the services of the deceased during the time of his minority, was reversible error.

4. Lastly, it is contended that the judgment should be reversed because the verdict is inadequate in amount. There are many cases of this kind in which verdicts have been sustained ranging in amounts from $500 to as much as $3,000. It has been said that a jury in this class of cases is authorized to estimate the pecuniary damages from the facts proved in connection with their own knowledge and experience. *City of Chicago v. Scholten*, 75 Ill. 468; *Chicago, R. I. & P. R. Co. v. Morris*, 26 Ill. 400; *Chicago & A. R. Co. v. Shannon*, 43 Ill. 346. But a verdict for only $10, for the pecuniary loss caused by the death of a bright, intelligent child, three years and four months old, shocks the sensibilities of all fair-minded persons, and if any recovery is to be had in this case, which question we do not determine, it should be for a reasonable and substantial sum.

For the giving of the erroneous instruction complained of, and on account of the amount of the verdict, which seems to us to be inadequate, we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.