GILMAN, RESPONDENT, v. THE G. W. DART HARDWARE CO., APPELLANT.

(No. 2,872.)

(Submitted September 16, 1910.    Decided October 17, 1910.)

[111 Pac. 550.]

*Personal Injuries—Death—Parent and Child—Earnings of Minor—Damages—Evidence—Mortality Tables.*

Death—Minor Son—Damages—Statutes.
  1. In an action for the death of his minor son, the plaintiff can recover for pecuniary benefits reasonably to be expected to be received from the deceased after his majority, in view of Revised Codes, section 6485, giving an action for the death of a minor child, section 6486, permitting the award of such damages as may be just, and section 3751, making it the duty of children to support a parent who is unable to maintain himself.

Parent and Child—Parent's Right to Child's Earnings—Minority.
  2. The right of a father to the earnings of his minor child is limited to his minority.

Death—Parent's Expectation of Pecuniary Benefit—Evidence—Question for Jury.
  3. In an action for the death of the plaintiff's minor son, evidence *held* sufficient to go to the jury on the question whether the plaintiff had a reasonable expectation of receiving pecuniary aid from his son both before and after his majority.

Same—Minor Child—Damages—Pecuniary Benefit—How Estimated.
   4.  In an action for the death of a minor son, the jury may fix the
   damages at the sum required to purchase an annuity equal to the
   amount that the minor might reasonably be expected to contribute
   yearly to the plaintiff during his expectancy of life.

Same—Minor Son — Damages — Pecuniary · Benefit—Evidence — Mortality
   Tables.
   5.  In an action for the death of a minor son, the jury, in computing
   the father's expectancy of life, and in reaching the amount required to
   purchase an annuity equal to his expectation of pecuniary benefit from
   the life of his son, may be guided by the standard mortality and an-
   nuity tables.

Same—Minor Son—Damages—Expectancy of Life—Evidence.
   6.  In an action by a father for the death of a minor son, the jury, in
   fixing damages, can consider the expectancy of life of the deceased only
   to show that he would probably have outlived his father.

*Appeal from District Court, Beaverhead County; Llew. L.*
*Callaway, Judge.*

Action by John M. Gilman against the C. W. Dart Hardware
Company.  Judgment for the plaintiff, and the defendant ap-
peals from it and an order denying a new trial.   Affirmed.

In behalf of Appellant, *Mr. W. S. Barbour,* and *Messrs. Lamb*
*& Walker* submitted a brief; oral argument by *Mr. Lamb.*

*Mr. Joseph C. Smith* filed a brief in behalf of Respondent, and
argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

The plaintiff in this action is the father of J. L. Gilman, who
at the time of his death was about eighteen years of age.  He
was killed through the alleged negligence of the defendant
corporation and its managing agent, one Connolly, in putting
him, its employee, to work in a trench without warning as to its
dangerous condition.  The trial resulted in a verdict for $3,000
in favor of the plaintiff.  Judgment was entered on the verdict,
from which judgment and an order denying a new trial the de-
fendant has appealed. ·

1.  It is contended that the complaint does not state facts suffi-
cient to constitute a cause of action.  Our examination thereof,

however, leads to the conclusion that the pleading is not open to the criticism advanced in the brief of counsel.

2.   It is also contended that the evidence is insufficient to sustain a finding that the deceased was in the employ of the defendant at the time of his death.   We have read the evidence. In our view it was sufficient to warrant the court in submitting the question to the jury and overruling the motion for a new trial so far as that point is concerned.

3. The court charged the jury, in effect, that the plaintiff was not limited in his right of recovery to damages sustained by him by reason of loss of services of his son from the time of his death to the day of his majority, but that he might "recover for pecuniary benefits reasonably to be expected to be received from the deceased after his majority."   We think there was no error in so charging.   Our statutes (Revised Codes) relating to the right of recovery for death by wrongful act read as follows:

"Sec. 6485.   A father, or in case of his death, or desertion of his family, the mother may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another.   Such action may be maintained against the person causing the injury or death, or if such person be employed by another person who is responsible for his conduct, also against such other person.

"Sec. 6486.   When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person.   In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

It will be noted that section 6485 relates to the injury or death of a minor child, while section 6486 refers to the death of a person not a minor, and the latter section expressly provides that in both cases such damages may be given as under all the

circumstances of the case may be just.    There is no limitation upon the amount to be recovered in either case, except that it shall be a just award under the circumstances.    It is true that the right of a father to the earnings of his child is limited to the period prior to majority, but it does not necessarily follow that the pecuniary loss sustained in the death of a child is limited to what the child will earn before he becomes of age.    On the contrary, the circumstances may be such as to indicate that such loss will be much greater.    It is provided by section 3751 of the Revised Codes that it is the duty of the children of any poor person, who is unable to maintain himself by work, to maintain such person to the extent of their ability.

The case of *Dean* v. *Oregon R. & N. Co.*, 38 Wash. 565, 80 Pac. 842, is relied on by the appellant.    That case, however, is not, in its facts, similar to the instant one.    The court said: "But it appearing that he [the deceased boy, eighteen years old] had abandoned the home of his parents, and had sent them absolutely nothing since said abandonment, we do not think it a fair presumption to be indulged that his conduct for the few years preceding his death would all be changed, and that he would soon be found returning home, or contributing his wages to his parents.    This was a matter requiring proof."    We do not understand from this decision that the supreme court of Washington decided the question we are considering.    It was contended by the defendant that the plaintiff had "shown no damages entitling him to any recovery."

In the case of *Agricultural & M. Assn.* v. *State, Use of Carty,* 71 Md. 86, 17 Am. St. Rep. 507, 18 Atl. 37, also cited by appellant's counsel, the court of appeals of Maryland held, as we understand the decision, that the evidence was insufficient to warrant the conclusion that the minor son would have been of any pecuniary benefit to his father after he attained his majority.

The New York court of appeals, in *Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504, 18 N. E. 108, said: "The jury were not bound, in estimating the compensation to be made for the death

of the child, to confine their considerations to her minority. It is true that the plaintiff, as father, could command her services only during her minority. But in certain contingencies she might, after her majority, owe him the duty of support, which could, by legal proceedings, be enforced; and after that event she might, in many ways, be of great pecuniary benefit to him. In estimating the pecuniary value of this child to her next of kin, the jury could take into consideration all the probable, or even possible, benefits which might result to them from her life, modified, as in their estimation they should be, by all the chances of failure and misfortune. There is no rule but their own good sense for their guidance, and they were not in this case bound to assume that no pecuniary benefits could come to the next of kin from this child after her majority."

The supreme court of Wisconsin, in *Thompson* v. *Johnston Bros. Co.,* 86 Wis. 576, 57 N. W. 298, said: "There can be no doubt that in such a case the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life, even beyond his majority. That depended upon her pecuniary circumstances, and the evidence admitted related directly to such circumstances."

The United States circuit court of appeals, fifth circuit, in the case of *Texas & P. Ry. Co.* v. *Wilder,* 92 Fed. 953, 35 C. C. A. 105, said: "There is no merit in the specifications of error, which are founded upon the false assumption that the damages in the cause were restricted to the benefits which the plaintiff might have derived from the services of their son up to the time of his majority. We are clearly of opinion that the damages should not have been so restricted, and that in this cause it was proper for the trial judge to charge the jury that, in assessing the damages, they had a right to consider what reasonable expectations the plaintiffs had of pecuniary benefits to be received from their son after he should have reached the age of majority. * * * In some jurisdictions the parent has, by statute, an action against the child for support. But, apart from any such statute, there certainly is an indisputable natural obligation on

the part of the child to support his necessitous parents.   The plain dictate of nature requires a child, grown up to manhood, to relieve the wants of his destitute parents, and the obligation is one which men ordinarily fulfill.   Why, then, should parents who have been deprived of their child by the fault of another be debarred from compensation for the full benefits which they reasonably expected from the child?   *   *   *   In the case at bar the son was over eighteen years of age.   He was strong, healthy, sober, and hardworking.   He was dutiful, and evinced his willingness to assist his parents by freely giving his earnings to his mother.   It was plainly proper in this cause for the trial judge to instruct the jury that they could consider whether the parents had a reasonable expectation that their son would continue to assist them after his majority.''

The supreme court of Arkansas, in *Railway Co.* v. *Davis,* 55 Ark. 462, 18 S. W. 628, said: ''But the question in every case under the statute is: Does the evidence show a reasonable expectation of pecuniary advantage to the next of kin, whether it be a parent, sister, or another who stands in that relation?   Recovery may be had in either case as readily upon a reasonable expectation of a gratuity as of the enjoyment of a legal right. If the loss of the decedent has deprived the next of kin of a legal right to services or support, that fact does not militate against his right to recover also for a gratuitous pecuniary advantage, which the proof shows he had the reasonable expectation of receiving if the life of the deceased had continued.''   To the same effect are the following cases: *Pierce* v. *Conners,* 20 Colo. 178, 46 Am. St. Rep. 279, 37 Pac. 721; *Gulf etc. Ry. Co.* v. *Compton,* 75 Tex. 667, 13 S. W. 667; *Boyden* v. *Fitchburg R. R. Co.,* 70 Vt. 125, 39 Atl. 771; *Draper* v. *Tucker,* 69 Neb. 434, 95 N. W. 1026; *Atchison etc. Ry. Co.* v. *Cross,* 58 Kan. 424, 49 Pac. 599; *Flaherty* v. *New York Cent. R. R. Co.,* 19 R. I. 604, 36 Atl. 1132; *Illinois Central R. R. Co.* v. *Reardon,* 157 Ill. 372, 41 N. E. 871; *Beaman* v. *Martha Washington Min. Co.,* 23 Utah, 139, 63 Pac. 631.

The testimony of the plaintiff disclosed the fact that his family consisted of himself and eight living children, six of whom were minors; that the son, J. L. Gilman, was a strong, vigorous, active, and healthy boy who had advanced as far as the end of his second year in the high school before he left his home near Leavenworth, Kansas, to seek his own living. He had shown unusual mechanical ability and intended to become an electrical engineer. He left home on July 12, 1907, and was killed on January 8, 1908. The father is the owner of a farm of eighty acres, with a mortgage of $2,000 upon it; the net value of his property, real and personal, being about $3,000. When the son left the parental roof, it was the understanding that he would send money home. He said he would do so for the purpose of paying the expenses of the education of his younger brothers. Plaintiff testified: "I will answer that we talked the matter over, his mother and I, and we considered ourselves as being in that, as one, in fact. We had contributed to his support, education, and maintenance and had given him all the education we thought we could afford to at that time, and it was his turn to help in the support of the family and the education of the younger children. That had been expected of him, and it was true of the others. We talked the matter over, my son and I talked it over; and while I cannot repeat the exact words, in substance the meaning was expressed in those terms, not once, but many times. From July, 1907, to January, 1908, I am unable to state how much money my son contributed for those purposes, my support and the education of his brothers. It was something over $75 and something less than $100. He sent it to his mother." Under these circumstances, we think there was sufficient testimony to warrant the district court in submitting to the jury the question whether the plaintiff had a reasonable expectation of receiving pecuniary assistance from his son, both before and after he attained his majority. As was well said by Mr. Justice McFarlane, speaking for the supreme court of Missouri in the case of *Rosenkranz* v. *Lindell Ry. Co.*, 108 Mo. 9, 32 Am. St. Rep. 588, 18 S. W. 890: "What may or may not

be done by anyone in the future depends upon so many contingencies that prospective loss of earnings cannot be susceptible of direct and conclusive proof, even in case of adults. Nevertheless, such damages are uniformly allowed. * * * It is properly held in such cases, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience, and enlightened conscience of the jurors, guided by the facts and circumstances in the case." (See *Flaherty* v. *Butte Electric Ry. Co., ante,* p. 89, 111 Pac. 348.)

Testimony was admitted tending to show that plaintiff had a life expectancy of twenty-four years, and that a boy of eighteen had an expectancy of forty-three years. Deceased was earning about $2.70 per day at the time of his death. Mr. McCarthy, a life insurance agent, testified that the cost of an annuity of $700 per year would be "somewhere around $15,000 or $16,000." Mr. A. L. Stone testified that the deceased could have maintained himself on one-half of $2.70 per day. The court instructed the jury as follows:

"No. 4. You are instructed that, if you find from the evidence that the plaintiff is entitled to recover for the pecuniary loss and damages sustained by reason of the death of his son, then you may award to the plaintiff such damages as under all the circumstances of the case may be just; and, in fixing the amount of such damages, you may in the exercise of a sound discretion fix the same at such sum as would be required to purchase an annuity equal to the amount that such son might reasonably be expected to contribute yearly to the plaintiff during the period of expectancy of the plaintiff's life; but you cannot find such sum to be more than $6,000.

"No. 5. In computing the expectancy of life, and in arriving at an amount sufficient to purchase an annuity, you may be guided by the evidence submitted respecting standard mortality and annuity tables. You should, however, bear in mind the uncertainty of life, and the possibility that the deceased might not have contributed to the plaintiff, if he had lived.

"No. 6. You are instructed that if you find for the plaintiff, then, in fixing the amount of his damages, you may base your calculations upon the period of the probable life of the father, as shown by the evidence; and testimony as to the expectancy of life of the deceased is proper only for the purposes of showing that he probably would have outlived his father."

The criticism offered by the appellant to the action of the court on this branch of the case is thus expressed in the brief of its counsel: "There is no proof in this case showing any promise to do anything for the father on the part of the deceased, or any evidence that he ever did. In this connection, we desire to urge that the court erred in giving instruction No. 5, because it enabled the jury to go into the wildest speculation, for by said instruction the jury were entitled to consider the possibility of whether or not the deceased might or might not have contributed to the plaintiff if he had lived." We believe that the question thus raised by counsel is fully covered by what has already been said on another branch of the case, and that the authorities there cited fully sustain our decision that, in cases like the one at bar, the jury should be allowed to determine the question of damages.

Again, it is urged that the court erred in allowing the witness McCarthy to testify that the expectancy of life of a male person eighteen years of age was forty-three years. As we understand the position of counsel, this specification of error is also based upon the contention that no recovery could be had for expected pecuniary assistance or benefits after the age of majority was reached, and this question has already been considered.

We find no error in the record. The judgment and order appealed from are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.