LIDA MAE DARNELL, ADMINISTRATRIX OF THE ESTATE OF BOONE DARNELL, DECEASED, APPELLEE, V. PANHANDLE COOPERATIVE ASSOCIATION, APPELLANT.

120 N. W. 2d 278

Filed March 8, 1963. No. 35378.

Holtorf, Hansen & Fitzke and Alfred J. Kortum, for appellant.

Wright, Simmons & Hancock, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

Boone Darnell died as the result of an explosion and fire at his home on March 3, 1960. He was survived by his widow, Lida Mae Darnell, who, as administratrix of his estate, brought this action to recover damages for his wrongful death. The jury returned a verdict in favor of the plaintiff and against the defendant, Panhandle Cooperative Association. The defendant's motion for new trial was overruled and it has appealed.

From our examination of the record we have determined that the judgment must be reversed and the cause remanded for a new trial. For that reason, only those errors assigned which require a reversal or which are likely to occur upon the retrial will be discussed.

In 1956 Boone Darnell and his wife, the plaintiff,

moved to a farm near Minatare in Scotts Bluff County. Soon thereafter they purchased a propane system from the defendant. The propane system consisted of a 500-gallon storage tank located outside of the house and copper tubing running from the tank to a kitchen stove, a hot water heater, and a heating stove in the house. The defendant installed the system and connected it to the appliances. The defendant laid the tubing upon the surface of the ground but later Mr. Darnell buried the tubing 6 or 8 inches in the ground. All of the propane which Mr. and Mrs. Darnell used was purchased from the defendant.

At a later date Mr. Darnell accidentally cut the tubing while digging a hole near the house. Mr. Darnell repaired the break in the line himself. On the next day the repair was inspected by one of the defendant's employees who told Mr. and Mrs. Darnell that the repair was safe and could be covered up.

In 1957, Mr. and Mrs. Darnell installed a sewer system in their home. The system consisted of a septic tank near the house and a cesspool farther away. The drain lines from all of the fixtures except the toilet led directly to the cesspool. The line from the toilet emptied into the septic tank and from there into the cesspool. The line from the toilet was vented at the edge of the house.

In the fall of 1959 the Darnells became concerned about the amount of propane which they were using. There was evidence that they discussed the amount of usage with several employees of the defendant. There was also evidence that Boone Darnell discussed the matter of an odor about the property with an employee of the defendant. The evidence as to these conversations is in dispute.

For some time before the explosion the Darnells and other persons had noticed an objectionable odor in their home. Mr. Darnell had also suffered from stomach aches and headaches and some of the plants in the house

had died. In an effort to remove the odor from the house they pumped out the septic tank and aired the house on the day before the explosion. On the following morning the odor was very strong. Mrs. Darnell was in the kitchen and Mr. Darnell was about to leave the house when the explosion occurred.

After the explosion both Mr. and Mrs. Darnell were in the crawl space under the house. Mrs. Darnell crawled out and went to a neighbor's house to get help so that Mr. Darnell could be removed from the wreckage. When Mrs. Darnell returned the house was on fire. Mr. Darnell died shortly after that without having been removed from the wreckage.

A deputy state fire marshal made an investigation at the site of the explosion and fire several days later. As a part of the investigation the propane line between the storage tank and the house was uncovered. When the dirt was removed from around the tubing near the house at the place where Mr. Darnell had repaired the line, it was discovered that a flare nut had cracked or split into two pieces. The flare nut was a part of the fitting that Mr. Darnell had used to repair the line.

There was evidence from which the jury could have found that propane gas had escaped from the supply line through the broken fitting, had seeped into the crawl space under the house, had been ignited by a spark from an electric motor attached to a water pump in a pit under the house, and had caused the explosion and fire.

The plaintiff's allegations of negligence related to the repair of the propane line and the failure of the defendant to inspect the propane line. Any issue concerning the installation of the propane system was eliminated by the defendant's motion for summary judgment. The plaintiff's theory of the case was that there would have been no leak in the propane line if a proper fitting had been used in the repair of the line; and that if the defendant had inspected the propane system, the leak

would have been detected and the explosion and fire would have been prevented.

The defendant admitted that Boone Darnell died as the result of the explosion and fire on March 3, 1960. The defendant's theory of the case was that the explosion and resulting fire was caused by sewer gas. The defendant also alleged that the plaintiff and Boone Darnell were guilty of contributory negligence and that they assumed the risk of an explosion by remaining in their home when they knew that some form of gas was present.

In instruction No. 3 the trial court summarized the pleadings. The trial court advised the jury that the plaintiff alleged that the proximate cause of the death of Boone Darnell was the negligence of the defendant in the following particulars: "a. Made a defective repair in 1955 which, upon inspection should have been revealed. * * * b. In failing to inspect plaintiff's propane system in 1955 and at the time of each delivery of propane thereafter. * * * c. At the time of the repair of the ruptured line in that it failed to inspect and warn plaintiff of the hazard of such improper installation. * * * d. Defendant was negligent when, upon being notified by plaintiff of the excessive consumption of gas on the premises, it failed thereafter to properly inspect the permises (premises) for a gas leak. * * * e. Defendant was negligent in that it failed to inspect and see that which should have been seen when complaint of odor of gas was made by Boone Darnell. * * * f. Defendant was negligent in that it failed to inspect and see that which should have been seen when it had reason to believe that an inspection should be made. * * * g. Defendant was negligent in advising plaintiff and Boone Darnell that it had inspected said premises and that there was no leak in the above described propane system."

It is reversible error to submit issues to a jury which find no support in the evidence. Swanson v. Murray, 172 Neb. 839, 112 N. W. 2d 11. Instruction No. 3 was

erroneous and prejudicial in that it submitted allegations of negligence which were not supported by the evidence. There was no evidence that the defendant made any repairs to the propane system in 1955 or at any time. There was no evidence that at any time the defendant advised the plaintiff and Boone Darnell that it had inspected the premises and that there was no leak in the propane system.

Instruction No. 3 was also erroneous and prejudicial because it placed a higher duty upon the defendant than the law requires. Under the facts and circumstances in this case the defendant had no duty to inspect the plaintiff's propane system in 1955 and at the time of each delivery thereafter.

A propane supplier has no duty to inspect service pipes owned and controlled by others on private property unless it has knowledge of a probable defective condition in the pipes or has knowledge of circumstances rendering it probable that gas is escaping therefrom. Where the supplier has good cause to believe that an inspection should be made of the propane system of one of its customers, the failure to make an inspection of the system may be negligence. Clay v. Butane Gas Corp., 151 Neb. 876, 39 N. W. 2d 813. There is no evidence that in 1955 and at the time of each delivery of propane thereafter the defendant had knowledge of a probable defective condition in the Darnell propane system or of circumstances rendering it probable that gas was escaping therefrom.

Instructions Nos. 23, 24, 25, 26, 27, and 28, given by the trial court, were as follows:
"INSTRUCTION NO. 23

The defendant is not an insurer of the safety of the customer. The defendant which did not own, or control the pipes or appliances in a customer's building is in no way responsible for the condition in which they are maintained, and consequently is not liable for injuries caused by a leak therein of which it has no knowledge.

## "INSTRUCTION NO. 24

The law imposes a duty on a gas company distributing bottled gas as follows: Propane or bottled gas is a dangerous agency. Its distribution is accompanied by many possible dangerous consequences and it is therefore well established that a higher degree of care and vigilance is required in dealing with such agency than is required in the ordinary affairs of life. A degree of care commensurate to the danger involved is required of a distributor of propane to avoid injury and damage. In case of failure to exercise such care, and injury results, it is liable.

## "INSTRUCTION NO. 25

It is the law that, although the law does not impose upon the distributor of propane the duty of inspection in every case, yet when its agent has good cause to believe that an inspection should be made it is negligent not to inspect it and if so, it is liable for damages caused by such negligence.

## "INSTRUCTION NO. 26

It is the duty of the gas propane company, as soon as it receives notice of a leak, to take all necessary steps to prevent an explosion. It matters not through what source it receives information that there is a leak, it must act at once.

## "INSTRUCTION NO. 27

A company engaged in the sale of a dangerous fuel commodity such as propane must have employees efficient in their line and is bound to anticipate injuries resulting from the use of such commodities.

## "INSTRUCTION NO. 28

Generally a company supply (supplying) gas, whether the same is natural gas or bottled gas, is not under the duty of inspecting or keeping in repair supply pipes on private property in the absence of notice of leaking or otherwise defective conditions, but you are instructed that where the company has notice of fumes and suspicion of gas escaping it has the duty of inspecting the

premises to determine the source of the dangerous condition and if by proper inspection the leak in the customer's line could have been discovered, the company's duty is to cut off the supply until the line can be repaired and is liable for the consequences if it does not. Whether or not in this case defendant had notice of fumes and suspicion of gas escaping is for you to decide from the evidence."

Instructions Nos. 23 through 28 did not cure the errors contained in instruction No. 3. The most that can be said of these instructions is that they tend to conflict with instruction No. 3. Conflicting instructions are erroneous and prejudicial unless it is apparent from the record that the jury was not misled thereby. Carlson v. Chambers, 173 Neb. 166, 112 N. W. 2d 729.

The duty of the defendant, as a propane supplier, is to exercise a degree of care commensurate with the danger involved in the handling of propane which is a powerful and dangerous product. If the defendant had knowledge of circumstances which reasonably indicated that the Darnell propane system was defective and that gas was escaping from it, the defendant was required to do whatever was reasonably necessary under the circumstances to prevent any injury to Mr. and Mrs. Darnell or their property. If the defendant, under such circumstances, failed to do what a reasonable and prudent person exercising the high degree of care required of a propane supplier would have done, then the defendant is liable for any damages which were proximately caused by its negligence.

As we view the record, the evidence of the plaintiff tended to sustain two principal allegations of negligence. These were that the defendant was negligent in failing to warn Mr. and Mrs. Darnell that the repair made by Mr. Darnell was defective, and that the defendant was negligent in failing to inspect the Darnell propane system because it had knowledge of circumstances which in the exercise of due care required it to inspect the

system. The instructions of the trial court should have been confined to these matters.

There is no contention in this case that the defendant knew that there was a leak in the Darnell propane system. Instructions concerning what the duty of the defendant would have been if it had known that there was a leak in the propane system could only serve to confuse the jury and should not have been given.

The trial court permitted the plaintiff to testify to conversations that she had with Boone Darnell long before the explosion and to relate to the jury what Boone Darnell had said to her about conversations that he had had with employees of the defendant. This evidence was admitted over the objection of the defendant that it was hearsay and self-serving. Hearsay evidence is generally inadmissible and does not become admissible because of the death of the person whose statement is sought to be proved. Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500.

In one instance the plaintiff testified that Boone Darnell had talked to Willard Philson, an employee of the defendant, about the amount of propane that the Darnells had used and about the odor which they had noticed; that Philson had said that "sewer gas smelled practically the same as propane"; that the odor could be "from the tank"; and that Philson was "pretty sure it had to be sewer gas." After the answer had been received, an objection was made and sustained but the answer was not stricken and the jury was not admonished that it should disregard the answer. This evidence was highly prejudicial because it tended to prove the plaintiff's allegations that Boone Darnell had complained to the defendant about the odor of gas.

The plaintiff argues that this evidence was admissible to prove that Boone Darnell thought that the odor was caused by sewer gas. It would have been possible to prove that fact without relating the statements made by Philson to Boone Darnell. The reason given is not

sufficient justification for permitting the plaintiff to testify to conversations that she had with her husband concerning statements made to him by the defendant's employees.

The plaintiff further argues that there was no error because instruction No. 13 limited the use of this evidence. Instruction No. 13 was as follows: "In this case there is testimony concerning statements made by Boone Darnell to various persons. You are instructed that this evidence, when offered by the plaintiff, was admissible solely to show the mental state of Boone Darnell, pain, his knowledge, his attitude and his plans. It is not offered to show the specific truth of the facts set forth in any statements reported of Boone Darnell. You will therefore consider it only for the purpose for which it is admitted."

It was proper for the trial court to give a cautionary instruction relating to this testimony but we do not think that instruction No. 13 alone was sufficient in this case to eliminate the prejudicial effect of permitting the plaintiff to testify as to admissions made by the defendant's employees to her deceased husband. When evidence of this nature, which is not generally admissible, is offered for a limited purpose, the proper procedure is for counsel to state the limited purpose for which the evidence is being offered and for the trial court to admonish the jury that the evidence is being received for the limited purpose only and that it cannot be considered by the jury for any other purpose.

The plaintiff called a deputy state fire marshal as an expert witness. On redirect examination and over objection this witness was allowed to read from a manual furnished by the State Fire Marshal's office. There was no identification of the author of the manual other than by name, and the manual did not purport to be a regulation or an official document of any kind. The material was prejudicial to the defendant because the jury was advised that underground pipes containing

butane should be installed below the frost line and that heavier type fittings referred to as frostproof should be used in outside work in areas subject to freezing temperatures because lighter type flare fittings will sometimes crack and cause a leak.

The general rule is that textbooks, although standard authorities, are not competent independent evidence. Van Skike v. Potter, 53 Neb. 28, 73 N. W. 295. The error was not cured by testimony of the witness that it was his opinion that the statements read were accurate and correct. To be admissible, the opinion expressed must be that of the expert witness.

By instruction No. 15 the trial court cautioned the jury that a verdict for the plaintiff could not exceed certain amounts, and set out the amounts contained in the prayer of the petition. Such an instruction has been disapproved and should not be given. Chicago, B. & Q. R.R. Co. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920. The danger is that the jury may infer that a verdict may be returned for the entire amount prayed for. In effect, it amounts to a comment on the evidence and invades the province of the jury. The jury should base its findings as to the amount of damages sustained, if any, upon the evidence in the case. The verdict should not be influenced in any way by the size of the demand which appears in the pleadings.

In instruction No. 17 the trial court referred to the plaintiff as being entitled to recover damages because of a "loss of earnings." In an action for wrongful death the measure of damage is the pecuniary loss to the statutory beneficiaries. § 30-810, R. R. S. 1943; Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831. Although the plaintiff may introduce evidence as to the earnings of the deceased, the plaintiff may not recover the value of the earnings lost. The instructions should clearly state that so far as earnings are concerned, the recovery must be limited to the value of the amount which the benefi-

ciaries would have received from the earnings of the deceased.

The trial court submitted the issue of contributory negligence to the jury but failed to give an adequate instruction as to the comparative negligence rule. § 25-1151, R. R. S. 1943. The jury must be advised that if the plaintiff, or her decedent, is found to be guilty of negligence directly contributing to the injury complained of, she cannot recover, even though the defendant was negligent, unless the negligence of the plaintiff, or her decedent, was slight and the negligence of the defendant was gross in comparison therewith; and if, in comparing the negligence of the parties, the contributory negligence of the plaintiff, or her decedent, is found to exceed in any degree that which, under the circumstances amounts to slight negligence, or if the negligence of the defendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of the plaintiff, or her decedent, however slight, will defeat a recovery. And even when the plaintiff has established her right to recover under this rule, it is the duty of the jury to deduct from the amount of damage sustained such amount as her contributory negligence, or the contributory negligence of her decedent, if any, bears to the whole amount of damage sustained. Main v. Sorgenfrei, 174 Neb. 523, 118 N. W. 2d 648.

The trial court did not submit the issue of assumption of risk to the jury. The doctrine of assumption of risk is applicable where the injured party knows that a danger exists and voluntarily assumes the risk of injury from that danger. The rule does not apply to an unknown and hidden danger. Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040. Assumption of risk is a defense which is independent of the defense of contributory negligence although both defenses may arise under the same set of facts. Brackman v. Brackman, 169 Neb. 650, 100 N. W. 2d 774.

The evidence in this case established that Boone Dar-

nell knew that some form of gas was present in the house. There is evidence that he thought the gas came from the sewer system. There is no evidence that he knew the source of the gas until the morning of the explosion. We conclude that the evidence was not sufficient to present a question for the jury as to assumption of risk.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.