Earl Selders and Ila Selders, Administrator and Administratrix of the Estates of Marcella Selders, Doureen Selders, and Gary Selders, deceased, appellants, v. Charles Dale Armentrout et al., appellees.

207 N. W. 2d 686

Filed May 25, 1973. No. 38564.

Moyer & Moyer, for appellants.

Hutton & Garden, Deutsch & Hagen, Kirby & Spittler, and Thomas H. DeLay, for appellees.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, Newton, and Clinton, JJ.

McCown, J.

This is an action by Earl and Ila Selders to recover damages for the wrongful deaths of three of their minor children. The children were killed in an automobile accident. The jury found the defendants Charles and William Armentrout negligent and returned a verdict against them for the exact amount of the medical and funeral expenses of the three children. The parents have appealed.

The sole issue on this appeal involves the proper elements and measure of damages in a tort action in Nebraska for the wrongful death of a minor child. The court essentially instructed the jury that except for medical and funeral expenses, the damages should be the monetary value of the contributions and services which the parents could reasonably have expected to receive

from the children less the reasonable cost to the parents of supporting the children.

The defendants contend that the measure of damages is limited to pecuniary loss and that the instructions to the jury correctly reflect the measure and elements of damage. The plaintiffs assert that the loss of the society, comfort, and companionship of the children are proper and compensable elements of damage, and that evidence of amounts invested or expended for the nurture, education, and maintenance of the children before death is proper.

An analysis of the history of our wrongful death statutes is appropriate. The statutory provision creating a cause of action for wrongful death has never contained the word "pecuniary" but only referred to an action for "damages." That statute was section 1428, Rev. St. 1913, and is now section 30-809, R. R. S. 1943. The statute is still identical, word for word. What might be referred to as the procedural and limitation provisions were originally contained in section 1429, Rev. St. 1913, now section 30-810, R. S. Supp., 1972. In 1913, that section provided in part: "* * * the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death * * *." In 1919, that provision was changed to read: "The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained." Laws 1919, c. 92, § 1, p. 235. This language and the preceding portions of the statute still remain unchanged today. In 1919, that particular language was followed by the words "and the avails thereof shall be paid to and distributed among such persons in the same proportions as the personal property of an intestate under the inheritance laws." From 1919 to 1945, the word "pecuniary" did not appear in section 30-810, R. S. 1943, nor any amendments to it.

In 1945, the language of section 30-810, R. S. 1943,

providing that "the avails" of a wrongful death action should be distributed as personal property of an estate under inheritance laws was changed to the present language that: "The avails thereof shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such persons." The statutory reference to "damages * * * sustained" remains unqualified and unrestricted.

It would seem clear that the word "pecuniary" as it now appears in the statute does not refer to the "damages" recoverable but only to the method of apportioning "the avails" or the amount recovered as damages in a wrongful death action.

Although the defendants assert that the measure and elements of damages recoverable in a wrongful death action are by statute limited to pecuniary loss, and this state has sometimes been placed in the category of states having statutes of that kind, the historical background demonstrates the erroneousness of that concept. The case of Ensor v. Compton, 110 Neb. 522, 194 N. W. 458, decided in 1923, after the 1919 amendment above referred to, said: "This amendment was made by the legislature after this court had, by a long line of decisions, held that damages in this class of cases were limited under the statute to money loss or its equivalent. This change, while significant, does not provide a wide open door to all sorts of claims for damages. The loss under the statute is still a pecuniary loss." That same case, however, allowed a recovery by a surviving husband for loss of services and companionship of his wife and said: "In states having a statute similar to our own, it has generally been construed as permitting recovery of damages for loss of service and companionship under special circumstances where the evidence shows they have a money value."

It is quite apparent from an examination of the judicial decisions and the legal literature in the field, that

a broadening concept of the measure and elements of damages for the wrongful death of a minor child has been in the development stage for many years. See, Annotation, 14 A. L. R. 2d 486; Speiser, Recovery for Wrongful Death, § 3:1, p. 54, et seq.; and § 4:16 to § 4:28, p. 323, et seq. Following a discussion of the rigid common law rules limiting recovery for wrongful death to the loss of pecuniary benefits, Prosser states: "Recent years, however, have brought considerable modification of the rigid common law rules. It has been recognized that even pecuniary loss may extend beyond mere contributions of food, shelter, money or property; and there is now a decided tendency to find that the society, care and attention of the deceased are 'services' to the survivor with a financial value, which may be compensated. This has been true, for example, not only where a child has been deprived of a parent, * * * but also where the parent has lost a child * * *." Prosser, Law of Torts (4th Ed.), § 127, p. 908.

The original pecuniary loss concept and its restrictive application arose in a day when children during minority were generally regarded as an economic asset to parents. Children went to work on farms and in factories at age 10 and even earlier. This was before the day of child labor laws and long before the day of extended higher education for the general population. A child's earnings and services could be generally established and the financial or pecuniary loss which could be proved became the measure of damages for the wrongful death of a child. Virtually all other damages were disallowed as speculative or as sentimental.

The damages involved in a wrongful death case even today must of necessity deal primarily with a fictitious or speculative future life, as it might have been had the wrongful death not occurred. For that reason, virtually all evidence of future damage is necessarily speculative to a degree. The measure and elements of damage involved in a wrongful death case, however,

have been excessively restrictive as applied to a minor child in contrast to an adult. Modern economic reality emphasizes the gulf between the old concepts of a child's economic value and the new facts of modern family life. To limit damages for the death of a child to the monetary value of the services which the next of kin could reasonably have expected to receive during his minority less the reasonable expense of maintaining and educating him stamps almost all modern children as worthless in the eyes of the law. In fact, if the rule was literally followed, the average child would have a negative worth. This court has already held that contributions reasonably to be expected from a minor, not only during his minority but afterwards, may be allowed on evidence justifying a reasonable expectation of pecuniary benefit. Draper v. Tucker, 69 Neb. 434, 95 N. W. 1026; Fisher v. Trester, 119 Neb. 529, 229 N. W. 901. Even with that modification, the wrongful death of a child results in no monetary loss, except in the rare case, and the assumption that the traditional measure of damages is compensatory is a pure legal fiction.

Particularly in the last decade, a growing number of courts have extended the measure of damages to include the loss of society and companionship of the minor child, even under statutes limiting recovery to pecuniary loss or pecuniary value of services less the cost of support and maintainance, or similar limitations. See, Fussner v. Andert, 261 Minn. 347, 113 N. W. 2d 355; Wycko v. Gnodtke, 361 Mich. 331, 105 N. W. 2d 118; Lockhart v. Besel, 71 Wash. 2d 112, 426 P. 2d 605; Wardlow v. City of Keokuk, 190 N. W. 2d 439 (Iowa, 1971).

In this state, the statute has not limited damages for wrongful death to pecuniary loss but this court has imposed that restriction. For an injury to the marital relationship, the law allows recovery for the loss of the society, comfort, and companionship of a spouse. This court has allowed such a recovery for the wrongful

death of a wife. See Ensor v. Compton, 110 Neb. 522, 194 N. W. 458. There is no logical reason for treating an injury to the family relationship resulting from the wrongful death of a child more restrictively. It is no more difficult for juries and courts to measure damages for the loss of the life of a child than many other abstract concepts with which they are required to deal. We hold that the measure of damages for the wrongful death of a minor child should be extended to include the loss of the society, comfort, and companionship of the child. To the extent this holding is in conflict with prior decisions of this court, they are overruled.

The trial court gave NJI No. 4.60 as to wrongful death but entirely omitted paragraph 2i dealing with companionship, counseling, and advice. That omission was probably sanctioned under our previous decisions. The plaintiffs having raised the issue of the measure of damages for the wrongful death of a minor child both in the trial court and on this appeal are entitled to the benefit of the new rule announced in this case and should be afforded a new trial on the issue of damages only.

For the guidance of the court on retrial, we believe that evidence of expenses of birth, food, clothing, instruction, nurture, and shelter which have been incurred or were reasonably necessary to rear the child to the age he or she had attained on the date of death are not properly admissible. We conclude that the investment theory of measuring damages by the amounts expended in raising the child is inappropriate and improper.

The judgment of the trial court as to liability is affirmed, the judgment as to damages is reversed and the cause remanded for trial on the issue of damages only, consistent with our holding in this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, C. J., dissenting.

I dissent strongly to both the conclusion and the

rationale of the majority opinion in this case. The opinion, in one arbitrary action, now states that: "The measure of damages for the wrongful death of a minor child should be extended to include the loss of the society, comfort, and companionship of the child."

There is nothing "limited" about the range of the new measure of damages adopted by the majority opinion.

Admittedly the new rule has an emotional appeal, and from the beginning of the basic concepts of the law, legislatures and the courts have had to deal with the emotional appeals and demands that *money* be awarded as compensation for a purely emotional loss. A wrongful death action does not arise out of the common law and out of the principles of stare decisis. Our wrongful death statute is purely a legislative creation, and this court, for over a period of 50 years of decisions, has followed its judicial duty in setting out precisely how the measure of damages is to be compensated. After a long line of judicial decisions, without legislative interference, and without dissent, the Legislature enacted the 1945 statute which provides: "The avails thereof (from a wrongful death action) shall be paid * * * in the proportion that the pecuniary loss suffered by each (heir) bears to *the total pecuniary loss suffered by all such persons."* (Emphasis supplied.) § 30-810, R. S. Supp., 1972. I submit that the majority opinion adopted by this court, in one arbitary action, despite its previous pronouncement of the measure of damages in this case itself, and despite the 1945 statute and the 50 years of settled and precise determinations and decisions of this court, both before the 1945 statute and afterwards, and despite any interference by the Legislature or without action by the Legislature since the 1945 statute, by judicial fiat is creating a class action on behalf of the next of kin or heirs to recover monetary damages for "society, comfort, and companionship," and permit a jury to translate emotional, conjectural, and speculative

sentimental values incapable of having any objective standards applied to them, into an award of money.

With the common assumption by the public and jurors of the presence of liability insurance in damage cases, and with the natural and human elements of sympathy present in the courtroom, it takes no imagination to see the amounts of verdicts that will be returned. In the hands of an imaginative lawyer, marshaling family albums and the testimony of sympathetic friends, and demonstratively organized and staged by a histrionic-minded lawyer, this court will undoubtedly be faced in the future with the almost impossible job of attempting to apply the generalized principles of excessiveness of a verdict to these judgments, which by their nature are an attempt to award money for a purely emotional loss conjectural, speculative in nature, and incapable of measurement or proof by any objective standard or related criteria.

I call attention to the following specific problems:

(1)  The outright repeal by judicial fiat of the 1945 statute, which confirmed the court's continued, consistent, and unrepealed interpretation of the measure of damages in a wrongful death case. I allude to the statute again and particularly to the language "to the total pecuniary loss suffered by all such persons." The majority opinion skips with a light fantastic toe over this language and this statute. We must remember that we are dealing with a legislative creation here, and not a right that is sourced in judicial decision flowing from the common law. It is absolutely indisputable that this was a corrective statute, enacted in 1945, the purpose of which was to conform the distribution of the avails in a wrongful death action to the established law as to the nature of the damages. The previous 1919 statute was absurdly inconsistent and unjust with reference to the method of distribution, providing for distribution under the intestate laws. This conforming statute accomplished symmetry between the measure of damages

and their method of distribution. It is inconceivable to me that any other conclusion could be drawn except that the 1945 statute affirmed and enforced the statutory interpretation that the court had placed upon the wrongful death statute for a period of 25 years. The query arises: What authority is there in the court for repealing by judicial fiat section 30-810, R. S. Supp., 1972? And what now, may I ask, is the method or the rule devised to determine the proper distribution of the loss or award?

I submit further that under any application of the rules of statutory interpretation, the statutes must be construed pari materia, that it is assumed that the Legislature was familiar with the law when it enacted the statute, and it is the duty of the court to harmonize the statutes enacted on the same subject, thus this 1945 conforming statute reaffirmed and declared the legislative intent to approve and to follow what had been the settled law in Nebraska for over 25 years at the time of the 1945 statute. I suggest further that it is now 50 years since the court's original interpretation in 1923, and that the 1945 statute, and the applicable case law, has been followed continuously over the period of the last 28 years, and has existed without dissent or a discoverable attempt to legislate, repeal, or amend the two statutes.

(2) The measure of damages. In the majority opinion, in the last few paragraphs, it is now forbidden to introduce any evidence or to instruct upon the pecuniary nature of the child's services, parent's expenses, etc. The majority opinion states: "For the guidance of the court on retrial, we believe that evidence of expenses of birth, food, clothing, instruction, nurture, and shelter which have been incurred or were reasonably necessary to rear the child to the age he or she had attained on the date of death *are not properly admissible*. We conclude that the investment theory of measuring damages by the amounts expended in raising

the child is *inappropriate and improper.*" (Emphasis supplied.) Thus the majority opinion seizes upon these pecuniary-related items and says that they shall not be considered. What, then, may I ask is the measure of damages? What is the jury going to be told, *under our statute, and the 1945 amendment* as to how it will measure the elements of comfort, society, and companionship? The majority opinion seizes upon the decision in Ensor v. Compton, 110 Neb. 522, 194 N. W. 458, in 1923, and states that it itself allows damages for loss of companionship between the husband and the wife. Overlooked and not mentioned in the majority opinion is the qualifying language in the Ensor case that states all damages of whatever nature must be supported by evidence that they have a money value. And the Ensor case says "of such a character that would give advantage to such survivor, and that a disallowance thereof would cause a pecuniary loss to him or her." And this court in Ensor further stated: "Nothing can be allowed on account of mental suffering or bereavement or as a solace on account of such death."

(3) The magnitude of the impact of the majority opinion and its reversal and overruling of both case and statutory law can be grasped by reading the following succinct summary of Nebraska law in the case of Wright v. Hoover, 329 F. 2d 72, in which it was stated: "(1) Generally, in a wrongful death action, the measure of damages is limited to the *pecuniary* loss sustained by the statutory beneficiaries. Darnell v. Panhandle Cooperative, 175 Neb. 40, 120 N. W. 2d 278, 286 (1963); Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831, 840-841 (1955); see also, Thevenot v. Sieber, S.D.N.Y., 204 F. Supp. 15, 16 (1962) (involving Nebraska law); (2) Where the deceased is an unemancipated child, such pecuniary loss is that which - measured by the present value of a dollar - will be sustained by the parent by reason of being deprived of the child's services during his minority, *and the loss of contributions,*

*if any, having monetary value that might reasonably be expected to be made by the child after reaching his majority.* Bailey v. Spindler, 161 Neb. 563, 74 N. W. 2d 344, 351 (1956); Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701, 714-715 (1955); Forrest v. Masters, 158 Neb. 506, 63 N. W. 2d 777, 780 (1954); Dorsey v. Yost, 151 Neb. 66, 36 N. W. 2d 574, 14 A. L. R. 2d 544 (1949); Fisher v. Trester, 119 Neb. 529, 229 N. W. 901 (1930); Draper v. Tucker, 69 Neb. 434, 95 N. W. 1026, 1028 (1903); (3) In calculating the pecuniary loss to the parent, the amounts which would have been expended for the child's maintenance and support are deducted from the monetary value of the child's services and contributions. Shields v. County of Buffalo, supra, 71 N. W. 2d at 714; Forrest v. Masters, supra, 63 N. W. 2d at 780; Dorsey v. Yost, supra, 36 N. W. 2d at 575-576; (4) *Pain, anguish, loss of society and companionship are not ordinarily proper elements of pecuniary loss.* In re Lucht's Estate, 139 Neb. 139, 296 N. W. 749, 752 (1941); Dow v. Legg, 120 Neb. 271, 231 N. W. 747, 748-749, 74 A. L. R. 5 (1930); Elliott v. City of University Place, 102 Neb. 273, 166 N. W. 621, 622 (1918)." (Emphasis supplied.)

(4) The rights created under Lord Campbell's Act in our death statute are statutory in creation and are governed solely by statute. There is a non sequitur inference in the majority opinion that because the 1919 statute simply mentioned damages, that therefore the statute itself is authority for a non pecuniary measure of damages such as loss of comfort, society, and companionship. Quite the contrary is true. I do not think I need to recite the elementary fact that in the event a general statute is enacted giving the right to recover damages. it then becomes a part of the judicial power and the duty of the court to lay down the measure of the damages, to be followed by a jury or a court in making its award. I point out that this court has consistently and clearly followed its duty in this respect, and more

importantly, its interpretation and application of the measure of damages has been affirmed and enacted into law by the Legislature itself in the 1945 statute. Courts, generally, and this court, have universally condemned, in all contexts, attempts by trial courts to submit the issue of damages generally to a jury and have spoken quite firmly that it is the duty of the court to set out for the guidance of the jury the measuring standards for its evaluation of the *money* damages that are awarded in a tort action. The majority opinion dodges this issue completely without any indication of any nature whatsoever as to how the damages are measured except that a jury may award any and all damages that it wants to as long as they are related to comfort, society, and companionship. I submit that such a position is nothing more than a permission to take money out of one man's pocket and put it into another's on the basis of sympathy and sentimental reasons. And in this connection, I call attention to the very material distinction that this court has made, and courts generally, between awards for pain and suffering accompanied by physical injury and loss, as distinguished from speculative awards for sentimental value, such as bereavement, comfort, society, and companionship.

(5) The majority opinon is not consistent with and is a denial of the general principles that this court and other courts have stated with reference to the allowance of compensatory damages. We have stated many times that compensatory damages are the only ones recoverable under our law (with certain exceptions not pertinent here). In general terms, we have stated many times that the law awards damages to a party injured from the negligence of another, not as a punishment of the negligent party, but as compensation for the pecuniary loss sustained by the injured party. And correlated to this we have denied and continually and consistently stated that damages which are uncertain, contingent, sentimental, conjectural, or speculative can-

not be made the basis of a recovery in an action for damages. We have also stated that proof of damages must be made with a reasonable degree of certainty and even though the damages may be real, they are not recoverable if they are too remote or are speculative in nature. I call attention to these basic principles in light of the super charged emotional atmosphere that a competent and zealous trial attorney can create in the trial of a death-damage action for the loss of a minor child.

In conclusion I reiterate what seems to me must be perfectly obvious. This is a statutorily created class action, completely under the control and jurisdiciton of the Legislature. It enacted the statute and over a period of 50 years has adopted and categorically confirmed our determination of the measure of damages, which measure of damages consistently follows the basic principles of damage law under Anglo-Saxon jurisprudence. I submit that whatever the majority's desire may be to change and reform the law of damages to accommodate to the emotional loss of a death of a minor child, that it is our duty as a court to abide by the legislative policy and action in this area. Besides all the other considerations mentioned the effect of such a change on insurance premiums, the matter of the distribution of the avails which question has not been answered in the majority opinion, the acceptance of any principle that the amount of the loss may be extended because the distribution of loss is covered by insurance, and many other considerations are purely for legislative policy consideration. I submit that the majority opinion. which arbitrarily and in one stroke, after 50 years of settled law and without public hearing or consideration of the different interests and policies involved, and in violation of the 1945 legislative policy clearly announced in the statute, and unrepealed, simply throws open a death claim for a minor child to a sympa-

thy and sentiment contest in the award of money, and is a serious mistake for us to make.

NEWTON, J., joins in this dissent.

CLINTON, J., dissenting.

I have concurred in the dissent of Judge White on the merits, but another aspect of this case deserves comment. That aspect may be defined by the answer to the following conundrum. When is "the law of the case" not "the law of the case?"

This is the third appearance of this plaintiff before us. On the first appeal the plaintiff sought a declaration that he, Earl Selders, was an insured under an automobile liability policy for the purpose of the uninsured motorist coverage thereunder. If he were, then State Farm Mutual Automobile Insurance Company would be required to respond in damages to him if he should obtain a judgment against the present defendants who were the uninsured motorists found by the jury in the present case to be responsible for the death of his minor children.

Because the children were not members of the plaintiff's household, the answer to the issue in the original case turned upon the measure of damages applicable to any possible recovery by the plaintiff under the wrongful death statute. We held that the plaintiff qualified as an insured under subdivision (3) of the policy definition of insured as that definition applied to uninsured motorist coverage. Subdivision (3) thereof read as follows: "(3) any person, with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which this coverage applies." We then reiterated the long-standing rule as to the measure of damages for death of a minor child as follows: " 'The measure of damages in an action such as we have before us is the pecuniary loss which the parent sustains by reason of being deprived of the child's services during his minority and the loss of contributions that might reasonably be expected to be made after reaching

his majority.'" State Farm Mut. Auto. Ins. Co. v. Selders, 187 Neb. 342, 190 N. W. 2d 789. It seems clear to me that the foregoing holdings established the law of the case and that under the former holdings of this court not only was the trial court bound, but so are we on this appeal. Master Laboratories, Inc. v. Chesnut, 157 Neb. 317, 59 N. W. 2d 571; Ripp v. Riesland, 180 Neb. 205, 141 N. W. 2d 840.

It is true, of course, that the present defendants were not parties to the first action, but nonetheless the effect of our holding in the first case was that State Farm Mutual would, to the limits of liability afforded by the policy, be required to pay any judgment the plaintiff might be awarded against these defendants. Given that result, the consequences for purposes of application of the rule of the law of the case are the same as if the original action was between the defendants and their own liability insurer, had they one.

The answer is that the law of the case is not the law of the case when this court on the second appeal by a raw exercise of judicial fiat says it is not.

The trial court properly instructed the jury on the measure of damages in accordance with the applicable rules under all the previous decisions of this court and under the law of the case as laid down in State Farm Mut. Auto. Ins. Co. v. Selders, *supra*. The judgment should be affirmed.

NEWTON, J., joins in this dissent.