BERNARD H. POST V. ROBERT H. OLMSTED, AD-
MINISTRATOR.

| 47  893|
| 57  577|

FILED APRIL 7, 1896.   No. 6473.

1. **Death by Wrongful Act:** DAMAGES: VERDICT FOR PLAINT-
IFF. Evidence in an action by an administrator for in-
juries causing the death of his decedent examined, and
*held* sufficient to sustain the verdict.

2. ———: ———: ———: EVIDENCE. A verdict of $2,400 in
such a case *held* not so clearly excessive as to warrant a
reversal, where the deceased was a boy seventeen years
old, a competent compositor, able to earn four dollars a
day, and his next of kin his father, forty-six years old,
a poor man with four younger children, although there
was no evidence that the son had as yet supplied his
father with any considerable amounts of money.

3. **Review:** ASSIGNMENTS OF ERROR. Other questions raised
not being supported by any sufficient assignments in the
motion for a new trial or petition in error, not con-
sidered.

ERROR from the district court of Douglas
county. Tried below before SCOTT, J.

*Cowin & McHugh, Langdon & Clair,* and *M. V.
Gannon,* for plaintiff in error.

*McCoy & Olmsted, contra.*

IRVINE, C.

This was an action by Olmsted, as adminis-
trator of William Allen Daniel, deceased, to re-
cover from Post for injuries causing the death of
plaintiff's decedent, alleged to be due to the negli-
gence of the defendant. There was a verdict and
judgment in the district court for the plaintiff for
$2,400 which the defendant seeks to reverse.
We designate the parties as they appeared in

the district court. The plaintiff, in a very elaborate brief, urges a number of technical objections to the record, which, he claims, preclude us from an examination of any of the errors assigned. The points so raised are so numerous that we pass them over without a detailed consideration, inasmuch as a consideration of the case on its merits, so far as is permitted by already well settled rules of practice, requires an affirmance of the judgment.

Complaint is made of certain rulings of the trial court on the admission of evidence. These we cannot consider, as there is no assignment in the petition in error presenting such questions.

Complaint is also made of certain instructions given by the court. In the motion for a new trial, and also in the petition in error, the only assignment with reference to these instructions is that "the court erred in giving instructions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11, which was duly excepted to at the time by the defendant." Under a well established rule, this assignment can be considered no further than to ascertain that one of those complained of was correct. It is at once apparent from an examination of the charge that a number were free from error. So this assignment must fail.

Another assignment is that the court erred in not giving instructions 1 and 2 asked by the defendant. No such instructions appear in the record.

A further assignment is that the court erred in overruling the motion for a new trial. As the motion for a new trial assigns six grounds, and no one is designated in the assignment in the petition in error, this presents nothing for review.

The remaining assignments are that the verdict is not supported by sufficient evidence and that it is contrary to law.   It is not contrary to law if supported by sufficient evidence.   The evidence tends to show that the defendant was a dairyman, using in his business a number of teams and wagons.   In January, 1891, two of these wagons, loaded with malt, were being drawn along Seventeenth street in Omaha, each propelled by three horses hitched abreast of one another.   The plaintiff's decedent, a boy seventeen years of age, was riding upon a hand sled attached to the rear of the foremost wagon.   The horses attached to both wagons were walking; but the rear wagon was approaching the front wagon.   It continued to draw nearer until one of the horses attached to the rear wagon stepped upon the dragging coat of the boy, which pulled him from the sled.   The horses and wagon then passed over him, inflicting injuries which resulted in death.   There is evidence tending to show that for some distance before the accident occurred, the horses attached to the rear wagon were close behind the boy; that the boy shouted to the driver to stop, and that bystanders also shouted to the driver and warned him of the danger; that the driver kept on, regardless of these warnings, until the accident, and continued without stopping until by-standers interfered.   Admitting, as argued by the defendant, that the boy's action in placing himself in such a position was negligent, still there is ample evidence from the foregoing facts that, notwithstanding such negligence on his part, the driver of the rear wagon ascertained his perilous position, and could have drawn his team aside or stopped it, or slackened its pace, in time to have

avoided the injury, and that ordinary prudence would have required such a course. There is ample in the evidence to show not only negligence causing the injury subsequent to the contributory negligence of the boy, but even wanton and criminal recklessness on the part of the driver. There is also sufficient to justify the jury in finding that this reckless disregard of the boy's safety continued after a period, when, by reason of the near approach of the horses, it had become impossible for the boy to extricate himself from his dangerous position.

It is also claimed that the evidence is insufficient to sustain the amount of the verdict. Conceding, contrary to several decisions of this court, that this question can be raised under a general assignment of the insufficiency of the evidence to sustain the verdict, we do not think the verdict can be declared excessive. The boy was seventeen years of age. He was a subcompositor on a daily paper, and stood next in line for a permanent position. Within a month before his death, he had earned in one night, $6.16, in six nights, $22.16, and in three nights, $9.24. The foreman testified that his earning capacity was about $4 per night on an average. The evidence tends to show that he was not only a competent compositor, but that he was of naturally industrious and economical habits. His expectancy of life, as shown by the evidence, was more than forty-three years. His next of kin was his father, forty-six years old, with an expectancy of twenty-four, a poor man, with four children younger than the deceased. While it is not shown that he had yet contributed any considerable amount to his father's support, we think that the legal relations

and other facts in evidence were sufficient to sus-tain a verdict for the amount rendered.  The pe-cuniary damage to the next of kin is always more or less a matter of estimate if not of conjecture; and under acts similar to ours, similar verdicts have been often sustained under slighter proof of expectancy. (*Union P. R. Co. v. Dunden*, 37 Kan., 1; *Johnson v. Chicago & N. W. R. Co.*, 64 Wis., 425.)

JUDGMENT AFFIRMED.