TROY LAMBERT, A MINOR, BY AND THROUGH BARBARA JONES, GUARDIAN, ET AL., APPELLEES, V. NEBRASKA CRIME VICTIM'S REPARATIONS BOARD, APPELLANT.

336 N.W.2d 320

Filed July 15, 1983. No. 82-354.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellant.

David L. Herzog, P.C., and Alan G. Stoler, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

This action originated with an application to the Nebraska Crime Victim's Reparations Board (board) for reparations under the Nebraska Crime Victim's Reparations Act (Act), Neb. Rev. Stat. §§ 81-1801 et seq. (Reissue 1981), due to the loss by Troy and Nyree Lambert of their mother, Ruby Smith Lambert Hardin, and for the loss by Ruby O. Smith of her daughter. The board denied Troy and Nyree any recovery under the Act, and awarded Ruby O. Smith $750 for funeral expenses incurred in the burial of her daughter, Ruby Smith Lambert Hardin, and an attorney fee of $37.50.

Plaintiffs appealed the decision of the board to the District Court for Douglas County, which court modified the decision of the board and awarded Troy and Nyree $10,000 each, awarded Ruby O. Smith $3,867.83, and awarded plaintiffs' attorney $1,193.39, with costs charged to defendant. From the decision of the District Court the board has appealed.

In this appeal the board argues that the District Court erred in its consideration of the Act, including the availability of appropriated funds and the need of plaintiffs for financial aid, and in its finding that the decision of the board was arbitrary and capricious.

Ruby Smith Lambert Hardin was married to and divorced from George Lambert. During the course of this marriage, two children were born, Troy and Nyree Lambert. When the marriage was dissolved, the custody of these two children was awarded to their mother. The decree specified that the father provide support of $75 per month for each of the two children. There was some evidence to suggest that these payments were being made. Subsequently, Ruby Smith Lambert was married to Alan V. Hardin. The Hardins were later separated, and a

petition for dissolution of their marriage was filed on October 10, 1980. On November 1, 1980, Alan V. Hardin entered the home of Ruby Hardin, located at 3910 Burdette Street, Omaha, by driving his automobile through one of its exterior walls, and shot Ruby Hardin to death in the presence of her two children, Troy and Nyree. Alan V. Hardin was thereafter convicted of second degree murder and sentenced to a life term in the Nebraska Penal and Correctional Complex. At the present time these children are in the temporary custody of their aunt and appointed guardian, Barbara Jones, pursuant to order of the District Court in which the dissolution proceedings were pending.

The third plaintiff in this case, Ruby O. Smith, as the mother of the deceased, incurred expenses for the burial of her daughter. The cost of the funeral and burial of the deceased was $3,514.20.

The plaintiffs applied to the board, seeking payment as victims of a crime under the Act. The matter was reviewed by Daniel Ryberg, a hearing officer appointed by the board. Following a hearing, Ryberg found that these two children are eligible for compensation under § 81-1815(3) of this Act, which states: "In a case in which a person is injured or killed as a result of conduct specified in sections 81-1801 to 81-1841, or by any act of any other person which is within the description of offenses listed in sections 81-1801 to 81-1841, the board or a hearing officer may order the payment of compensation:

. . . .

"(3) In the case of death of the victim, to or for the benefit of any one or more of the dependents of the victim."

Section 81-1819 provides for the type of losses that may be recovered: "The board or hearing officer may order the payment of compensation for:

"(1) Expenses actually and reasonably incurred as a result of the personal injury or death of the victim;

"(2) Loss of earning power as a result of total or partial incapacity of the victim and reasonable expenses of job retraining or similar employment-oriented rehabilitative services for the victim;

"(3) *Pecuniary loss to the dependents of the deceased victim*; and

"(4) Any other loss resulting from the personal injury or death of the victim which the board determines to be reasonable." (Emphasis supplied.)

"In determining whether to make an order [for the benefit of a dependent] . . . the board or hearing officer shall consider all circumstances determined to be relevant, including, but not limited to . . . the need for financial aid." § 81-1816(1). "The board or a hearing officer may award compensation . . . for which the applicant is not compensated . . . by the United States, by a state or any of its subdivisions or agencies, or by a private source of emergency awards . . . . Life insurance proceeds and social security payments shall not be treated as forms of such collateral compensation." § 81-1817(1).

Although Hearing Officer Ryberg made several rather heroic efforts to learn from the litigants the "need for financial aid," he was given little if any help. There was testimony that the deceased was employed full time, working a typical 8-hour day, 5 days a week, for which she was paid approximately $6 per hour, and that this job provided the money to support her children by making possible the obtaining of food, clothing, shelter, and transportation. The hearing officer inquired of Barbara Jones: "Mrs. Jones, strictly from a financial standpoint, since November, have the children received any — through your care or Mrs. Smith's care or anyone else, contributions from a financial standpoint? Have they been deprived of anything that they had prior to November?" Mrs. Jones replied: "No, I don't believe so because I get Social Security for them from Ruby."

Ryberg found these children failed to show any

pecuniary loss or financial need arising from the murder of their mother. Because they failed to make such a showing, Ryberg recommended to the board that they be awarded no compensation. Regarding Ruby Smith's application for compensation, Ryberg found that she incurred an expense of $3,514.20 in the burial of her daughter. Ryberg found such an expense is recoverable under § 81-1819(1), set forth above.

Section 81-1832 provides: "All determinations, decisions, and awards made by the board or any hearing officer may be appealed pursuant to the provisions of Chapter 84, article 9."

Neb. Rev. Stat. § 84-917(5) (Reissue 1981) provides for review by the District Court in matters such as this: "The review shall be conducted by the court without a jury on the record of the agency." Subsection (6) under that statute provides the scope of the District Court's review, that being a determination if the board or agency's decision is supported by competent evidence, correct under the relevant law, and if it is arbitrary or capricious.

When reviewing such appeals before this court, we have stated we need only determine if the proper rules of law have been applied and if the decision reached by the board or agency is supported by competent evidence in the record. See *Adams Central School Dist. v. Deist, ante* p. 307, 334 N.W.2d 775 (1983). We review the decisions of the board and the court below in light of the foregoing.

The record indicates that the deceased was employed by the Lozier Corporation, and earned roughly $10,000 per year. After her divorce from George Lambert the deceased had custody of her two children and supported them, providing food, clothing, and a home in which to live. Since the death of their mother, the two children have been under the care of their aunt, Mrs. Barbara Jones. Mrs. Jones and her husband have supported these children by way of child support payments made by their father,

George Lambert, social security benefits received due to their mother's death, and support supplied by Mr. and Mrs. Jones directly. The record also reflects that the deceased and her children had a close and loving relationship.

In his recommendation to the board, Ryberg stated that the children should not recover for the loss of their mother's love and affection, as might be allowed in the case of a wrongful death action. With this position we agree. Ryberg also found no proof of actual financial need in the record, evidently because the children are being cared for by their aunt. The board agreed with these findings.

It seems that in the opinion of the board a child must show that it has an immediate need of support to recover under this Act. Under that interpretation the support of an aunt who has no legal obligation to support such a child precludes any award under this Act.

The board also seems to take the position that the loss of future support by the mother of these children is not a pecuniary loss to the children. Evidently, again, because the relatives of these children have voluntarily taken on the burden of supporting the children, they are precluded from recovering under this Act.

This position works to effectively preclude any recovery for individuals in the position of Troy and Nyree Lambert. It seems if a child, whose parent has been murdered, is thereafter supported by anyone, whether under a legal obligation or not, that child cannot recover under this Act.

Troy and Nyree Lambert were 8 and 6 years old, respectively, at the time of their mother's murder. The record indicates that their mother supported them. Clearly, these children are entitled to recover under this Act, as they are dependents of a victim of a crime. § 81-1815(3). As such, they are entitled to recovery of pecuniary losses incurred due to this crime. § 81-1819(3).

Although Chapter 4, § 001.03, of the Nebraska Crime Victim's Reparations Board rules and regulations, which was not adopted and filed until February 14, 1983, provides that " 'Pecuniary loss' shall mean loss of support to a surviving dependent . . ." the rule in effect at the time of this action, Rule No. 11, simply parroted the words of the statute, i.e., "Compensation may be ordered for . . . pecuniary loss to the dependents of the deceased victim . . . ." In *Dow v. Legg*, 120 Neb. 271, 231 N.W. 747 (1930), this court construed the meaning of "pecuniary loss," at least as it applied to Nebraska's wrongful death act, then Comp. Stat. § 1383 (1922). We said: " 'The loss under the statute is still a pecuniary loss. . . .'

"A pecuniary loss has been defined as 'a loss of money, or of something by which money or something of money value may be acquired.' . . .

. . . .

" '. . . The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. . . .' " *Id.* at 274, 231 N.W. at 749. These children have lost the financial support of their mother, for at least the remainder of their minority, due to this crime. Such support would surely total more than $10,000, the limit of any single award under the Act. § 81-1823. This loss is one of money and therefore fits within the definition of "pecuniary loss" we have employed in the past.

The pecuniary damage to a dependent of a deceased is always more or less a matter of estimate. As early as *Post v. Olmsted*, 47 Neb. 893, 66 N.W. 828 (1896), a case involving suit by a father for loss of support by reason of the death of a 17-year-old son, we said: "The boy was seventeen years of age. . . . [H]is earning capacity was about $4 per night on an average. . . . His next of kin was his father, forty-six years old, with an expectancy of twenty-four, a

poor man, with four children younger than the deceased. While it is not shown that he had yet contributed any considerable amount to his father's support, we think that the legal relations and other facts in evidence were sufficient to sustain a verdict for the amount rendered [$2,400]. The pecuniary damage to the next of kin is always more or less a matter of estimate if not of conjecture; and under acts similar to ours, similar verdicts have been often sustained under slighter proof of expectancy." *Id.* at 896-97, 66 N.W. at 829-30. We hold that the loss of this future financial support is a pecuniary loss which is compensable under this Act. Denying this recovery by the board was contrary to the letter of and intent behind this Act, and was arbitrary and capricious. As such, we affirm that portion of the judgment of the District Court.

The evidence before the board with respect to Ruby O. Smith's claim regarding the funeral expenses incurred in the burial of her daughter is clear. Receipts and bills in the record clearly show that Mrs. Smith incurred an expense of $3,514.20. Mr. Ryberg, the hearing officer, found this to be the proper amount to be awarded to Mrs. Smith under § 81-1819(1), and recommended the board make such an award. The board agreed that Mrs. Smith should be awarded compensation for these expenses but, without giving any reason, reduced this award to $750. This would be in accordance with Chapter 4, § 002.06, of the board's rules and regulations, but, as earlier noted, this particular chapter of the rules did not become effective until after the present appeal was lodged in this court. Rule No. 11, in effect at the time of these proceedings, provided that "Compensation may be ordered for . . . expenses actually and reasonably incurred as a result of the . . . death of the victim . . . ." The action of the board in reducing this claim was arbitrary and capricious, and the District Court was correct in ordering the full expenses paid. However, we modify that award

by reducing the amount to $3,514.20, which we find the evidence supports.

The board argues that in eliminating the award to the two children it was exercising the discretion granted by § 81-1814 regarding the availability of funds appropriated for these purposes. The only problem with that contention is that the record is utterly devoid of any such information.

Because of the modification of the allowance for funeral expenses, the attorney fee must be limited to $1,175.71.

The judgment of the District Court is affirmed as modified.

AFFIRMED AS MODIFIED.

McCOWN, J., concurs in the result.